## SPROUL v. GAMBONE.
### Civil Action No. 770.

District Court, W. D. Pennsylvania.
Jan. 26, 1942.

F. W. Stonecipher, Stonecipher & Ralston, and Lewis M. Alpern, all of Pittsburgh, Pa., for plaintiff.

Jacob A. Markel and Markel & Markel, all of Pittsburgh, Pa., for defendant.

SCHOONMAKER, District Judge.

This is an action by a trustee in bankruptcy to set aside under Sec. 70, sub. e, of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. e, a bulk sale by the bankrupt to the defendant of one hundred and forty-three cigarette-vending machines, together with their contents, and to recover the value thereof. The case was heard on the complaint, answer and proofs. We have made and file herewith our findings of fact and conclusions of law. The facts of the case may be briefly summarized as follows:

The bankrupt carried on a wholesale tobacco and candy business, and in connection therewith, owned and operated a large number of cigarette-vending machines, which were placed in various hotels, candy and cigar stores throughout western Pennsylvania. The only retail business conducted by the bankrupt was by means of these cigarette-vending machines. On or about November 1, 1939, the bankrupt sold the cigarette-vending machines to the number of one hundred and forty-three, with their contents, to Felix Gambone, for the sum of $10,932.32. Felix Gambone was the father of James U. Gambone, who was the manager of the bankrupt's business. The bankrupt was not engaged in the sale of vending machines as a business, and had never sold any such machines in the ordinary course of business until the sale was made to the father of his business manager, as above related. In consummating the sale, the defendant did not comply with the Bulk Sales Act of Pennsylvania of May 23, 1919, P.L. 262, 69 Purdon's Statutes, § 523, in that he failed to perform any of the duties with respect to creditors required by the above-stated Act. The defendant admits that the provisions of this Bulk Sales Act were not complied with. But the defendant contends that the transaction involved was not one within the purview of the provisions of the Bulk Sales Act, and further that the plaintiff was barred from bringing action by reason of the ninety-day period provided for in the Bulk

Sales Act which had expired prior to the filing of the complaint in the instant case. These vending machines constituted a large part of the bankrupt's fixtures in his business. On an audit of the bankrupt's records, it was disclosed that these vending machines constituted at the time of the sale thereof, 82½% of the bankrupt's fixed assets. On his records, the bankrupt assigned a value of $13,000 to these vending machines out of a total value of $16,000 for all fixed assets. The bankrupt was engaged principally as a wholesale dealer in tobaccos and candies; the only retail business he conducted was through these cigarette-vending machines. This retail business done through these vending machines constituted approximately 22½% of all the business of the bankrupt. In consummating the sale, the bankrupt disposed of his entire retail business.

In our opinion, this sale was a bulk sale within the meaning of the Pennsylvania Act. Section 5 of this Act defines a "bulk sale" as follows: "A sale and transfer, or attempted sale and transfer, in bulk, in contemplation of this act, shall be deemed to be any sale or transfer of the whole or a large part of any stock of goods, wares, or merchandise of any kind, or fixtures, or of goods, wares, or merchandise of any kind and fixtures, by auction or otherwise than in the ordinary course of trade and in the regular and usual prosecution of the seller's business: * * *." 69 P.S.Pa. § 525.

It is perfectly plain that this sale of vending machines and contents constitutes the whole, or a large part of the merchandise and fixtures of the bankrupt that were used in the retail part of his business. It is clear, too, that this sale was not in the ordinary course of the bankrupt's trade in the regular and usual prosecution of the bankrupt's business. He did not make a business of selling vending machines. This was the first sale of vending machines he ever made, and in this deal he closed out his entire stock of vending machines and contents.

■ In our view, the sale by a merchant of his fixtures constitutes a sale in bulk under the plain provisions of the Act. The Pennsylvania courts have so considered this Act. See Union National Bank of Mahanoy City v. Garvey et al., C. P. Schuylkill County 1936, 29 Pa.Dist. & Co.R. 638. Judge Houck stated on page 640 of 29 Pa. Dist. & Co.R.: "It will be noted that the

act applies when fixtures only are sold, even though no goods, wares or merchandise are transferred. If a merchant or other like dealer sells his fixtures in bulk and does not sell any stock, nevertheless, the sale is governed by the statute."

In Gitt v. Hoke, 301 Pa. 31, 151 A. 585, the Pennsylvania Supreme Court defined both the term "merchandise" and the term "fixtures" as used in the Bulk Sales Act as follows: "The words 'goods,' 'wares,' and 'merchandise' include commodities handled by merchants or dealers in the course of trade; not the unsold products of a manufacturer or a farmer's produce, and the fixtures intended are evidently those which belong to the business, like trade fixtures, and not to the building."

In the light of these authorities, it seems perfectly plain that the cigarette-vending machines are fixtures within the meaning of the Act. They are certainly not merchandise, because the bankrupt was not engaged in the business of selling vending machines. In view of the fact that these machines were used by the bankrupt in his business of selling cigarettes, they must be regarded as fixtures. These machines served as storage cases for the cigarettes, and as cash boxes for the bankrupt in connection with his retail cigarette business. The fact they were distributed in different locations does not alter their character. Today many commodities that in the past were sold over counters in stores are now being sold through vending machines placed in all types of public places for the purpose of making such commodities more available to the consuming public.

Nor can we regard the retail business done by the bankrupt through these vending machines as a mere incident of the bankrupt's wholesale business. The sales through these vending machines constituted approximately 22½% of all the bankrupt's business; and on consummating this sale, the bankrupt sold his entire retail business.

■ We have no hesitancy therefore in holding this to be a bulk sale within the meaning of the Pennsylvania Act. The sale of the merchandise and fixtures in the retail department of the bankrupt's business is certainly a bulk sale within the Act.

There are no Pennsylvania cases involving the particular facts of the instant case; but in other states the courts have held sales by merchants of a branch store of their business to be bulk sales within the bulk sales laws of these states. In Goodman v.

Clarkson, 1929, 39 Ga.App. 383, 147 S.E. 183, a sale by an automobile dealer of all the merchandise at a branch office was held to be a bulk sale. In Frieling v. Emling, 248 Ill.App. 475, a sale of one store by a vendor who retained another store of greater value was held to be a sale in bulk. In Ogden Ave. State Bank v. Cherry, 225 Ill.App. 201, a sale of one store out of several was deemed to be a sale in bulk. In Re Lipman, D.C.N.J.1912, 201 F. 169, the bankrupt was a wholesaler in Philadelphia and operated a retail store in Pleasantville, N. J. The sale of the retail store was adjudged by Judge Rellstab to be a bulk sale. In Mott v. Reeves, 125 Misc. 511, 211 N.Y.S. 375, affirmed Mott v. Matz, 216 App.Div. 819, 215 N.Y.S. 889, and affirmed Mott v. Reeves, 246 N.Y. 567, 159 N.E. 654, a vendor was a retail merchant of hardware, and as a side line was engaged in the business of wiring buildings and installing lighting fixtures under contracts with owners. In connection with his contracting business, he had a stock of merchandise consisting of fixtures, wires, conduits, and switch-boxes which he did not ordinarily sell to his hardware customers, but sold under contract for wiring jobs. The vendor sold his contracting business, including therein the merchandise which belonged thereto; and the sale was held to be a sale in bulk.

The sale in the instant case was for a large portion of bankrupt's fixtures, including the merchandise, and was used in connection with the sale of that merchandise through those fixtures. It was not made in the ordinary course of trade. It was therefore a sale in bulk within the meaning of the Bulk Sales Act.

■ It being conceded that the Bulk Sales Act was not complied with in the instant case in the consummation of this sale, we have no hesitation in holding that the sale of these vending machines was void under the provisions of the Pennsylvania statute. This sale being void against the bankrupt's creditors, it is void against the Trustee in Bankruptcy. Section 70, sub. e, of the Bankruptcy Act, 11 U.S.C.A., Section 110, sub. e, provides: "A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this Act [title] which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act [title], shall be null and void as against the trustee of such debtor."

In the instant case, at the time of the sale in question, the bankrupt was indebted to various creditors in the aggregate amount of approximately $49,000. The sale was void as to them, and therefore under this statute was null and void as against the trustee.

■ On the question of whether or not this action was barred by reason of the fact that this suit was not brought within ninety days after the consummation of the sale, this same point was raised by the defendant in his motion to dismiss the complaint in this case. We heard the defendant on this motion, and on July 16, 1940, we filed an opinion, 34 F.Supp. 441, in which we held that this action was not barred by the failure to bring the suit within the ninety-day period, by reason of the provisions of Section 11, sub. e, of the Bankruptcy Act. We do not need to repeat what we said on that point in our opinion of July 16, 1940. For the reasons there stated, we hold that this action was not barred by the Statute of Limitations, because the statute as to limitation must yield to the requirements of bankruptcy administration; and even if Section 11, sub. e, of the Bankruptcy Act should be held not to apply, yet the defendant's objection is not well taken, for the reason that within the ninety-day period fixed by the Pennsylvania Act, the plaintiff started proceedings in the Bankruptcy Court for an injunction and summary relief for the requisition of this property. We discussed these matters in our opinion of July 16, 1940, and do not need to repeat them here. An order for judgment in accordance with our findings of fact and conclusions of law filed herewith may be submitted.